**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Trademark Holder Identified in Exhibit 1, ) | Case No.: 1:21-cv-01123 |
| Plaintiff, ) | |
| v. ) | Judge: Hon. Thomas M. Durkin |
| Does 1-869, As Identified in Exhibit 2, ) | |
| ) | Magistrate: Hon. Gabriel A. Fuentes |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

Plaintiff Magenav, Inc., brings this action against Defendants, as identified on Exhibit 2 of the Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), unfair competition and false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). As alleged in the Complaint, the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling counterfeit products, bearing counterfeit versions of Plaintiff's HYGIENE HAND trademarks, through various websites/webstores designed to mislead consumers that the products sold are genuine HYGIENE HAND products.

The Defendants utilize online merchant platforms to open shop and create product listings for HYGIENE HAND marked goods, all the while actually selling low-quality, unlicensed counterfeits to unknowing consumers. Due to the pandemic, consumers are increasingly deprived meaningful in-person evaluation of online purchased goods which represent a substantial portion of sales at present. This is especially acute for Plaintiff because their product helps users avoid

commonly contaminated surfaces such as door handles.

Defendants' goods share several common characteristics indicative of a common source or manufacturer. They essentially all misappropriate the HYGIENE HAND Mark to sell low quality metal objects intended to mimic Plaintiff's product which is a brass tool featuring push-pull and hook attachments that enable users to open doors and use publicly shared surfaces in a sanitary manner that can be attached to a keychain. They also utilize the same color scheme on products that Plaintiff utilizes. Evaluating in person, the overall look, feel, and quality are substandard as compared to authentic HYGIENE HAND goods. For example, authentic HYGIENE HAND goods are made with better metal alloys and are finely shaped and tested to perform better than counterfeits.

Defendants attempt to avoid liability for selling counterfeit goods by concealing their identities and true nature of their criminal counterfeiting operation by utilizing pseudonyms and failing to disclose the true nature of their substandard and unlicensed goods. Plaintiff is forced to file these actions to combat Defendants' illegal counterfeiting of the Plaintiff's goods and the registered HYGIENE HAND Marks, as well as to protect unknowing consumers from purchasing low-quality counterfeits over the Internet through the Defendants.

Defendants directly target unlawful business activities toward consumers in Illinois and cause harm to Plaintiff's business within the Northern District of Illinois, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using websites to sell and/or offer for sale unlicensed and counterfeit products featuring Plaintiff's HYGIENE HAND trademarks. Defendants should not be permitted to continue their unlawful activities.

## II. STATEMENT OF FACTS

On March 2, 2021, this Court granted Plaintiff's Motion for Entry of a Temporary Restraining Order, including (1) A Temporary Injunction; (2) A Temporary Asset Restraint; (3) Expedited Discovery; and (4) Service of Process by Email (the "TRO") [Docket No. 11]. The TRO authorized Plaintiff to provide notice of these proceedings to Defendants by sending an e-mail to the e-mail addresses identified in Exhibit 2 of the Complaint and any e-mail addresses provided for Defendants. TRO at p.6 , Art. IX. Since and pursuant to entry of the TRO and its accompanying extension order [Docket No. 16], Plaintiff is in the process of serving all of the Defendants with the Complaint, summons, and other docket items pursuant to FRCP 4(f)(3). Plaintiff has also been working with third party service providers to transfer and disable the Infringing Websites. *Id*.

Plaintiff respectfully requests that this Court convert the TRO to a preliminary injunction against Defendants, so that they remain enjoined from the manufacture, importation, distribution, offering for sale, and sale of Counterfeit Products during the pendency of this action. As part of the Proposed Preliminary Injunction Order, Plaintiff requests that the Infringing Webstores financial accounts remain frozen until these proceedings have concluded.

### III. ARGUMENT

**A. Converting the TRO Is Appropriate and Necessary.**

Magenav, Inc. respectfully requests that this Court convert the TRO to a preliminary injunction to prevent further illegal conduct by Defendants. *See, e.g.*, *True Religion Apparel, Inc., et al. v. Does 1-100*, No. 1:12-cv-9894 (N.D. Ill. Jan. 15, 2013) (unpublished) (Docket No. 32); *Oakley, Inc. v. Does 1-100*, No. 1:12-cv-9864 (N.D. Ill. Dec. 27, 2012) (unpublished) (Docket No. 23); *Coach, Inc., et al. v. Lin Feng, etal.*, No. 1:12-cv-08963 (N.D. Ill. Nov. 29, 2012) (unpublished) (Docket No. 36).

The standards for granting a TRO and a preliminary injunction are the same and this Court

has previously ruled them satisfied. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted); *see also* 15 U.S.C. § 1116(a) (as amended by the Trademark Modernization Act of 2020). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See TY, Inc. v. The Jones Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

As established by the uncontroverted evidence in the Declaration of Avraham Goldstein [Docket No. 9, Attachment #1], the Declaration of Kevin Keener, and accompanying evidence of

infringement via screen captures of the infringing websites [Docket No. 9, Attachment #2 and Docket No. 2, Attachments ##2-19)], the requirements for entry of a preliminary injunction have been satisfied. The record establishes that through their illegal operations, Defendants have infringed upon Plaintiff's federally registered trademarks. The record reflects that Defendants source or obtain their products and merchandise from a similar source located within China and fence that illegal product using cookie cutter internet shops hosted on major third party e-commerce platforms. Thus, Plaintiff is entitled to preliminary injunctive relief against Defendants.

### B. The Equitable Relief Sought Remains Reasonable and Appropriate To Ensure An Equitable Resolution.

In addition to this Court's inherent authority to issue injunctive relief pursuant to FED. R. CIV. P. 65, the Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

The injunctive relief, specified in the TRO, should be converted to a preliminary injunction because it is narrow in scope and reasonable to prevent Defendants from further engaging in unlawful counterfeiting activities and benefitting from those actions.

#### i. There Exists A Heightened Need For Equitable Relief During The Upcoming Holiday Season

Plaintiff faces additional cause for concern regarding Defendants due to the ongoing pandemic. Plaintiff manufactures, markets, and distributes HYGIENE HAND marked products which are tailor-made for the ongoing situation and general unease related to spreading of disease generally. Defendants' counterfeiting actions are already harmful enough, and this harm will only increase as time progresses. Defendants' infringing and counterfeiting activities are particularly

harmful as they confuse consumers seeking products to assist them more safely regain their livelihoods during the pandemic. This provides an even stronger basis to continue enforcing the remedies contained in the TRO.

        ii.        <u>The Asset Restraining Order Remains Appropriate.</u>

Plaintiff also seeks to convert the TRO to a preliminary injunction so that Defendants' accounts in U.S.-based financial institution or companies remain frozen. Since entry of the TRO, Plaintiff has served the TRO upon third party web commerce websites that have assisted with identifying and freezing a number of financial accounts linked to the Infringing Merchants that are offering for sale and/or selling Counterfeit Products.

In the absence of a preliminary injunction, Defendants may attempt to move any assets from any accounts in U.S.-based financial institutions to offshore accounts. Therefore, a preliminary injunction order that requires Defendants' assets to remain frozen for the remainder of the proceedings will preserve the status quo. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief [under the Lanham Act] invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *Playboy Enter., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (stating that because "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement, . . . courts must implement fully the requirement of § 1117(a)(1) [allowing plaintiff] to recover (1) defendant's profits . . .").

Thus, an order continuing to freeze the Defendants' assets pending the conclusion of this action should be granted to ensure meaningful relief for Plaintiff and to preserve the status quo with foreign defendants who can abscond with assets at issue from the sale of counterfeit and

infringing goods.

## IV. CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court enter a Preliminary Injunction consistent with the terms of the TRO in order to preserve the status quo while Plaintiff seeks justice for its claims in its Complaint.

Dated this 26th day of March, 2021

Respectfully submitted,

By: /s/ Rishi Nair

Rishi Nair
ARDC # 6305871
Kevin J. Keener
ARDC # 6296898
Keener & Associates, P.C.
161 N. Clark Street, Suite #1600
Chicago, IL 60601
(312) 375-1573
rishi.nair@keenerlegal.com
kevin.keener@keenerlegal.com
